Thomas Lether, OSB No. 101708
LETHER LAW GROUP
1848 Westlake Ave N., Suite 100
Seattle, WA 98109
T: 206-467-5444 / F: 206-467-5544
tlether@letherlaw.com
*Counsel for Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY, a foreign insurer; and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign insurer,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST ENGINEERING SERVICE, INC., an Oregon corporation; and JAMES POPE, an Oregon citizen,<br><br>Defendants. | No. 3:26-cv-02212<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (collectively referred to as "Travelers") submit the following Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

## I. INTRODUCTION

1.1 This is an insurance coverage action seeking Declaratory Relief pursuant to 28 U.S.C. §§ 2201 and 2202. Travelers seeks a determination that it does not owe a duty to defend or indemnify Northwest Engineering Service, Inc. (NWESI) under the policies of insurance issued by Travelers with respect to the claims made against NWESI in the underlying lawsuit

entitled, *James Pope v. Northwest Engineering Service, Inc., et al.*, Multnomah County Circuit Court, Case No. 24CV04952 (the "Underlying Lawsuit").

## II. PARTIES

2.1 The Charter Oak Fire Insurance Company is a foreign insurance company organized under the laws of the State of Connecticut with its principal place of business located in the State of Connecticut.

2.2 Travelers Property Casualty Company of America is a foreign insurance company organized under the laws of the State of Connecticut with its principal place of business located in the State of Connecticut.

2.3 Defendant NWESI is an Oregon corporation with its principal place of business in Beaverton, Oregon.

2.4 Defendant James Pope, on information and belief, is a citizen of the state of Oregon and is the Plaintiff in the Underlying Lawsuit.

## III. JURISDICTION AND VENUE

3.1 Jurisdiction is properly before this Court pursuant to 28 U.S.C. § 1332 et sequent, as complete diversity exists among the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.2 This Court has jurisdiction over this Declaratory Judgment action pursuant to 28 U.S.C. § 2201 because there is an actual and justiciable controversy between the Parties with respect to the existence of insurance coverage under the policies of insurance issued by Travelers. A judicial determination and declaration of the rights and obligations of the Parties is necessary and appropriate at this time because Travelers has no adequate remedy allowed to resolve the current controversy.



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

3.3 Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and local court rules as this case involves claims for insurance coverage stemming from an alleged loss occurring in Oregon, and the Underlying Lawsuit is filed in the Multnomah County Circuit Court.

## IV. FACTUAL BACKGROUND

### A. Background

4.1 Travelers incorporates by reference and re-alleges Paragraphs 1.1 through 3.3 above as if fully set forth herein.

4.2 On July 1, 2021, Intel Corporation (Intel) entered into a contract with NWESI for NEWSI to perform services for Intel at Intel's facility.

4.3 Pursuant to the contract, NWESI was hired to perform Mechanical Systems Test and Balance Services.

### B. The Underlying Lawsuit

4.4 On January 31, 2024, James Pope filed the Underlying Lawsuit.

4.5 On September 3, 2026, James Pope filed the Fourth Amended Complaint in the Underlying Lawsuit against NWESI, Apollo Mechanical Contractors, Inc., Versum Materials US, LLC, and EMD Electronics.

4.6 In the Underlying Lawsuit, it is alleged that James Pope was an employee of Intel at its plant located in Hillsboro, Oregon. It is further alleged that the D1X Sub-Fab Building is among the factory buildings at the Hillsboro facility. The second level of this building houses the equipment that services the semiconductor factory tools.

4.7 In the Underlying Lawsuit, it is alleged that James Pope suffered a chemical/inhalation exposure at Pole BH-12 in the D1X Sub-Fab Building. It is further alleged



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

that Pole BH-12 houses a TIF 412 Chemguard tool and related exhaust system, regulator valves, and blast gate.

4.8 In the Underlying Lawsuit, it is alleged that, between August 2022 and April 2023, NWESI performed a set-up, testing, balancing, modulation, and commissioning of a TIF 412 Chemguard, and related exhaust system, regulator valves, and blast gate, at Pole BH-12 in the D1X Sub-Fab Building.

4.9 In the Underlying Lawsuit, it is alleged NWESI was responsible for ensuring the TIF 412 Chemguard, and related exhaust system, regulator valves, and blast gate, was safe to operate for chemical introduction and flow prior to the tools' commissioning in April 2023.

4.10 In the Underlying Lawsuit, it is alleged that, on or about July 16, 2023, James Pope was exposed to and inhaled Titanium Tetrachloride (TiC14), a toxic and dangerous chemical, while working at or around Pole BH-12 in the DIX Sub-Fab Building.

4.11 In the Underlying Lawsuit, it is alleged that James Pope suffered serious injuries as a result of the exposure.

4.12 In the Underlying Lawsuit, James Pope prays for judgment in the sum of $8,000,000 in non-economic damages and $1,416,886.10 in economic damages.

**C. <u>Travelers' Investigation and Claims Handling</u>**

4.13 Despite the lawsuit being filed in 2024, the Underlying Lawsuit was reported to Travelers on or about July 31, 2026. Thereafter, Travelers promptly acknowledged and opened a claim and initiated its claim investigation.

4.14 On October 1, 2026, Travelers issued coverage letter to NWESI advising it that there was no coverage available to NWESI for the claims asserted against it in the Underlying Lawsuit.



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**D. <u>The Travelers Primary Policy</u>**

4.15 The Charter Oak Fire Insurance Company issued a Commercial General Liability Policy to NWESI, policy number 680-4J727495, which was effective between October 1, 2022 and October 1, 2023 (the "Primary Policy"). The Primary Policy includes a $1,000,000 Each Occurrence limit and a $2,000,000 Products Completed Operations Aggregate limit.

4.16 The Primary Policy includes the following Insuring Agreement with respect to Coverage A – Bodily Injury and Property Damage Liability:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. […]
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period [. . . .]

CG T1 00 02 19

4.17 The Primary Policy contains the following definitions relevant to the foregoing provision:



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**SECTION V - DEFINITIONS**

[…]

**4.** "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person[. . . .]

[…]

**17.** "Occurrence" means:

**a.** an accident, including continuous or repeated exposure to substantially the same general harmful conditions [. . . .]

[…]

**25.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged [. . . .]

CG T1 00 02 19

4.18 The Primary Policy includes the following Professional Liability exclusion:

**EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LABILITY COVERAGE PART

**PROVISIONS**

**1.** The following is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services".



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

[…]

"Professional services" means any service requiring specialized skill or training, including:

**a.** Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or

**c.** Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph **a.** or **b.** above.

CG D3 80 10 11

4.19 The Primary Policy provides the following regarding the duties of an insured:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

[…]

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

CG T1 00 02 19

4.20 The Primary Policy provides the following Other Insurance endorsement:

**L. AMENDMENT OF EXCESS INSURANCE CONDITION – PROFESSIONAL LIABILITY**

The following is added to Paragraph **4.b., Excess Insurance**, of **SECTION IV – COMMERCIAL GENERAL**



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**LIABILITY CONDITIONS:**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is Professional Liability or similar coverage, to the extent the loss is not subject to the professional services exclusion of Coverage **A** or Coverage **B**.

CG D3 79 02 19

**E. <u>The Travelers Excess Policy</u>**

4.21 Travelers Property Casualty Company of America issued an Excess Follow-Form and Umbrella Liability Policy (the "Excess Policy") to NWESI, policy number CUP-3620T705, which was effective between October 1, 2022 and October 1, 2023. The Excess Policy includes a $5,000,000 Each Occurrence limit and a $5,000,000 Products Completed Operations Aggregate limit. Pursuant to EU 00 03 08 18 Schedule of Underlying Insurance, the Primary Policy, discussed above, is listed as the underlying insurance.

4.22 The Excess Policy contains following Excess Follow-Form Liability Insuring Agreement:

**SECTION I – COVERAGES**

**A. COVERAGE A – EXCESS FOLLOW-FORM LIABILITY**

**1.** We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage **A** of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. […]

**2.** Coverage **A** of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

[…]

**4.** For the purposes of Paragraph **1**. Above:

**a.** The applicable limit of insurance stated for the policies of "underlying insurance" in the Schedule Of Underlying Insurance will be considered to be reduced or exhausted only by the following payments:

**(1)** Payments of judgments or settlements for damages that are covered by that "underlying insurance". However, if such "underlying insurance" has a policy period which differs from the policy period of this Excess Follow-Form And Umbrella Liability Insurance, any such payments for damages that would not be covered by this Excess Follow-Form And Umbrella Liability Insurance because of its different policy period will not reduce or exhaust the applicable limit of insurance stated for such "underlying insurance";

**(2)** Payments of "medical expenses" that are covered by that "underlying insurance" and are incurred for "bodily injury" caused by an accident that takes place during the policy period of this Excess Follow-Form And Umbrella Liability Insurance; or

**(3)** Payments of defense expenses that are covered by that "underlying insurance", only if such "underlying insurance" includes such payments within the limits of insurance. However, if such "underlying insurance" has a policy period which differs from the policy period of this Excess Follow Form And Umbrella Liability Insurance, any such payments for defense expenses that would not be covered by this Excess



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

Follow-Form And Umbrella Liability Insurance because of its different policy period will not reduce or exhaust the applicable limit of insurance stated for such "underlying insurance".

EU 00 01 07 16

4.23 The Excess Policy contains the following definitions relevant to the foregoing provision:

**SECTION VI – DEFINITIONS**

**A.** With respect to all coverages of this insurance:

**1.** "Applicable underlying limit" means the sum of:

**a.** The applicable limit of insurance stated for the policies of "underlying insurance" in the Schedule Of Underlying Insurance subject to the provisions in Paragraphs **4.a.(1)**, **(2)** and **(3)** of **COVERAGE A - EXCESS FOLLOW-FORM LIABILITY** of **SECTION I - COVERAGES;** and

**b**. The applicable limit of insurance of any "other insurance" that applies.

[…]

**10.** "Underlying Insurance":

**a.** Means the policy or policies of insurance listed in the Schedule Of Underlying Insurance.

**b.** Includes any renewal or replacement of such policies if such renewal or replacement is during the policy period of this Excess Follow-Form And Umbrella Liability Insurance.

EU 00 01 07 16

//



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

4.24 The Excess Policy also contains the following Umbrella Liability Insuring Agreement:

**B. COVERAGE B - UMBRELLA LIABILITY**

**1.** We will pay on behalf of the insured those sums in excess of the "self-insured retention" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which Coverage **B** of this insurance applies.

**2.** Coverage **B** of this insurance applies to "bodily injury" or "property damage" only if:

**a.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

**b.** The "bodily injury" or "property damage" occurs during the policy period; and

**c.** Prior to the policy period, no insured listed under Paragraph **1.** in Paragraph **B., COVERAGE B - UMBRELLA LIABILITY,** of **SECTION II -WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, in whole or in part, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

[…]

**4.** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE.**



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**5.** "Bodily injury" or "property damage":

**a.** Which occurs during the policy period; and

**b.** Which was not prior to, but was during, the policy period known to have occurred by any insured listed under Paragraph **1.** in Paragraph **B.**, **COVERAGE B - UMBRELLA LIABILITY** of **SECTION II - WHO IS AN INSURED**, or any "employee" authorized by you to give notice of an "occurrence" or claim;

includes any continuation, change or resumption of the "bodily injury" or "property damage" after the end of the policy period.

**6.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** in Paragraph **B.**, **COVERAGE B - UMBRELLA LIABILITY,** of **SECTION II - WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**a.** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**b.** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**c.** Becomes aware by any other means that the "bodily injury" or "property damage" has occurred or has begun to occur.

**7.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**8.** Coverage **B** of this insurance does not apply to damages covered by any "underlying insurance" or



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

that would have been covered by any "underlying insurance" but for the exhaustion of its applicable limit of insurance.

EU 00 01 07 16

4.25 The Excess Policy contains the following Professional Services exclusion:

**ARCHITECT, ENGINEER OR SURVEYOR PROFESSIONAL SERVICES EXCLUSION – COVERAGE B**

This endorsement modifies insurance provided under the following:

EXCESS FOLLOW-FORM AND UMBRELLA LIABILITY INSURANCE

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **B.** of Section **IV – EXCLUSIONS:**

**PROFESSIONAL SERVICES**

“Bodily injury”, “property damage”, “personal injury” or “advertising injury” arising out of providing or failing to provide any "professional services".

**2.** The following is added to Paragraph **B.** of **SECTION VI – DEFINITIONS:**

"Professional services" means any service requiring specialized skill or training, including:

**a.** Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or

**c.** Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph a. or b. above.

EU 01 30 08 18

4.26 The Excess Policy contains the following Supplementary Payments provision:

**D. DEFENSE AND SUPPLEMENTARY PAYMENTS**

**1.** We will have the right and duty to defend the insured:

**a.** Under Coverage A, against a "suit" seeking damages to which such coverage applies, if:

**(1)** The "applicable underlying limit" is the applicable limit of insurance stated for a policy of "underlying insurance" in the Schedule Of Underlying Insurance and such limit has been exhausted solely due to payments as permitted in Paragraphs **4.a.(1), (2)** and **(3)** of **COVERAGE A - EXCESS FOLLOW-FORM LIABILITY** of **SECTION I - COVERAGES;** or

**(2)** The "applicable underlying limit" is the applicable limit of any "other insurance" and such limit has been exhausted by payments of judgments, settlements or medical expenses, or related costs or expenses (if such costs or expenses reduce such limits).

EU 00 01 07 16



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

4.27 The Excess Policy contains the following duties in the event of an occurrence:

**SECTION V – CONDITIONS**

[…]

**F. DUTIES REGARDING AN EVENT, OCCURRENCE, CLAIM OR SUIT**

**1.** You must see to it that we are notified as soon as practicable of an "event" or "occurrence" which may result in a claim under this insurance. To the extent possible, notice should include:

**a.** How, when and where the "event "or "occurrence" took place;

**b.** The names and addresses of any persons or organizations sustaining injury, damage or loss, and the names and addresses of any witnesses; and

**c.** The nature and location of any injury or damage arising out of the "event" or "occurrence".

**2.** If a claim is made or "suit" is brought against any insured which may result in a claim under this insurance, you must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**3.** With respect to Coverage **A**, the insured must:

**a.** Cooperate with us in the investigation, settlement or defense of any claim or "suit";

**b.** Comply with the terms of the "underlying insurance"; and

**c.** Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of the injury, damage or loss for which insurance is provided under this policy or any policy of "underlying insurance".

**4.** With respect to Coverage **B**, the insured must:



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

**a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**b.** Authorize us to obtain necessary records and other information;

**c.** Cooperate with us in the investigation, settlement or defense of any claim or "suit"; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which Coverage B may apply.

**5.** No insured will, except at that insured's own expense, voluntarily make a payment, assume any obligation, make any admission or incur any expense, other than for first aid for "bodily injury" covered by this insurance, without our consent.

**6.** Knowledge of an "event", "occurrence", claim or "suit" by your agent, servant or "employee" will not constitute knowledge by you, unless your insurance or risk manager, or anyone working in the capacity as your insurance or risk manager, or anyone you designate with the responsibility of reporting an "event", "occurrence", claim or "suit":

**a.** Has received notice of such "event", "occurrence", claim or "suit" from such agent, servant or "employee"; or

**b.** Otherwise has knowledge of such "event", "occurrence", claim or "suit".

EU 00 01 07 16

## V. THERE ARE ACTUAL AND JUSTICIABLE CONTROVERSIES

5.1 Travelers incorporates by reference and re-alleges Paragraphs 1.1 through 4.27 above as if fully set forth herein.



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

5.2 The Primary Policy provides coverage for "bodily injury" caused by an "occurrence" as those terms are defined by the Primary Policy.

5.3 There is an actual and justiciable controversy exists as to whether the Underlying Lawsuit alleges "bodily injury" as that term is defined.

5.4 There is an actual and justiciable controversy exists as to whether the Underlying Lawsuit alleges an "occurrence" as that term is defined.

5.5 There is an actual and justiciable controversy as to whether the claims against NWESI in the Underlying Lawsuit allege "bodily injury" caused by an "occurrence" as those terms are defined.

5.6 The Primary Policy excludes coverage for "bodily injury" arising out of the rendering or failure to render any "professional services" as those terms are defined.

5.7 The Primary Policy defines "professional services" as any service requiring specialized skill or training, including:

> **a.** Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;
>
> **b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or
>
> **c.** Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph **a.** or **b.** above.

CG D3 80 10 11

//



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

5.8 There is an actual and justiciable controversy as to whether the claims against NWESI in the Underlying Lawsuit allege "bodily injury" arising out of the rendering or failure to render any "professional services" by NWESI as those terms are defined.

5.9 Pursuant to the Primary Policy, NWESI is required to comply with certain terms and conditions as a condition precedent to coverage.

5.10 There is an actual and justiciable controversy as to whether NWESI complied with the cooperation provisions in the Primary Policy and whether any failure to comply on the part of NWESI prejudiced Travelers.

5.11 Pursuant to the Primary Policy, the Primary Policy is excess over any other insurance, whether primary, excess, contingent, or on any other basis, that provides Professional Liability or similar coverage.

5.12 There is an actual and justiciable controversy as to whether the Primary Policy is excess to any other insurance.

5.13 Pursuant to the Excess Policy, the Excess Follow-Form Liability Policy provides coverage for sums, in excess of the "applicable underlying insurance", that the insured becomes legally obligated to pay as damages, provided that the "underlying insurance" would apply to such damages but for the exhaustion of the applicable limits of insurance.

5.14 There is an actual and justiciable controversy as to whether coverage is available to NWESI under the Excess Policy.

5.15 Pursuant to the Excess Policy, the Excess Follow-Form Liability Policy is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.

//



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

5.16 There is an actual and justiciable controversy as to whether the exclusions contained in the "underlying insurance" operate to exclude coverage available to NWESI under the Excess Policy.

5.17 Pursuant to the Excess Policy, the Umbrella Policy provides coverage for damages the insured becomes legally obligated to pay because of "bodily injury", in excess of the "self-insured retention". Here, the self-insured retention listed on the declaration pages is $10,000.00.

5.18 There is an actual and justiciable controversy as to whether the claims against NWESI involve claims for "bodily injury" as that term is defined.

5.19 Pursuant to the Excess Policy, the Umbrella Policy provides coverage for damages the insured becomes legally obligated to pay because of "bodily injury" caused by an "occurrence".

5.20 There is an actual and justiciable controversy as to whether the alleged liability of NWESI is for "bodily injury" caused by any covered "occurrence".

5.21 Pursuant to the Excess Policy, the Umbrella Policy does not apply to damages covered by any "underlying insurance" or damages that would have been covered by any "underlying insurance" but for exhaustion of the applicable limit of insurance.

5.22 There is an actual and justiciable controversy as to whether the claims against NWESI are covered by the "underlying insurance".

5.23 Pursuant to the Excess Policy, coverage under the Umbrella Policy is excluded for "bodily injury" arising out of the rendering or failure to render "professional services".

5.24 The Excess Policy defines "professional services" as any service requiring specialized skill or training including:

> **a.** Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report,



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or

**c.** Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph **a.** or **b.** above.

EU 01 30 08 18

5.25 There is an actual and justiciable controversy as to whether the claims against NWESI in the Underlying Lawsuit allege "bodily injury" arising out of the rendering or failure to render any "professional services" by NWESI as those terms are defined.

5.26 Pursuant to the Excess Policy, the underlying insurance will be considered exhausted solely due to payments permitted by **4.a.(1)**, **(2)**, and **(3)** of "**Coverage A – Excess Follow-Form Liability**" of "**Section 1 Coverages**".

5.27 There is an actual and justiciable controversy as to whether the underlying insurance has been exhausted.

5.28 Pursuant to the Excess Policy, Travelers will have a duty to defend NWESI solely due to payments permitted by provision **D. Supplementary Payments**.

5.29 There is an actual and justiciable controversy as to whether Travelers has a duty to defend NWESI under the Excess Policy.

5.30 Pursuant to the Excess Policy, certain terms and conditions of the Excess Policy may preclude coverage and/or cause Travelers to withdraw its defense of NWESI, to the extent a



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

defense is provided for this claim, if such failure to comply prejudices Travelers' ability to investigate or defend the claims.

5.31 There is an actual and justiciable controversy as to whether NWESI has complied with the terms and conditions of the Excess Policy.

## VI. CAUSE OF ACTION FOR DECLARATORY RELIEF

6.1 Travelers incorporates by reference and re-alleges Paragraphs 1.1 through 5.31 above as if fully set forth herein.

6.2 Actual and justiciable controversies exist as to the rights and duties of the Parties under both the Primary Policy and Excess Policy (hereinafter, collectively, the "Travelers Policies").

6.3 Actual and justiciable controversies exist as to whether Travelers owes any defense obligation to NWESI for the claims asserted against it the Underlying Lawsuit

6.4 Pursuant to 28 U.S.C. §§ 2201 and 2202, Travelers requests that this Court grant Declaratory Relief in its favor and enter a judicial determination that Travelers does not have an obligation to provide a defense to NWESI under the Travelers Policies for the claims asserted against it in the Underlying Lawsuit.

6.5 Actual and justiciable controversies exist as to whether Travelers owes an indemnity obligation to NWESI for the claims asserted against it the Underlying Lawsuit

6.6 Pursuant to 28 U.S.C. §§ 2201 and 2202, Travelers requests that this Court grant Declaratory Relief in its favor and enter a judicial determination that Travelers does not have an obligation to provide any indemnity coverage to NWESI under the Travelers Policies for the claims asserted against it in the Underlying Lawsuit.

//



LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

## VII. PRAYER FOR RELIEF

WHEREFORE, Travelers, having specifically alleged the foregoing, now requests the following relief:

1. For a declaration of the rights and obligations of the Parties under the Travelers Policies;

2. For a declaration that Travelers does not owe NWESI a defense obligation under the Travelers Policies for any claims asserted against it in the Underlying Lawsuit;

3. For a declaration that Travelers does not owe NWESI any indemnity obligation under the Travelers Policies for any claims asserted against it in the Underlying Lawsuit;

4. For attorney fees and costs allowed by statute and law;

5. For all interest allowed by law; and

6. For other and further relief as the Court deems just and equitable.

DATED this 8th day of October 2026.

LETHER LAW GROUP

*/s/ Thomas Lether*

Thomas Lether, OSB No. 101708
1848 Westlake Ave N., Suite 100
Seattle, WA 98109
T: 206-467-5444 / F: 206-467-5544
tlether@letherlaw.com
*Counsel for Plaintiffs The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America*